RASTUS S. RANSOM and Others, Respondents, *v.* ROBERT L. CUTTING, Appellant, Impleaded with THE FARMERS' LOAN AND TRUST COMPANY, Defendant.

First Department, April 6, 1906.

Attorney and client — agreement by client contesting will to pay contingent fee — when such agreement not unconscionable or champertous — attorney can recover percentage on annuity paid to client — estoppel of client — attorney's lien enforcible in equity.

When a son, who has been disinherited by his father's will and is unable to pay attorneys to oppose the probate, enters into an agreement with attorneys, giving them forty per cent of all recovery in case of litigation and ten per cent of any sum received as a settlement, and also providing that the attorneys shall not call upon the client for moneys to pay disbursements, and there is no suggestion of fraud practiced upon the client by the attorneys, such agreement is not unconscionable and is enforcible by the attorneys.

When on a settlement the client has received $30,000 in cash and an annuity of $4,000 from the estate, the attorneys are entitled to ten per cent, not only on the lump sum received, but also upon the annuity as paid.

Rules governing contracts between attorney and client, stated.

Such agreement, although it provides that the client is not to be called upon to pay disbursements, is not champertous if the client voluntarily goes to the attorneys and the attorneys did not seek the retainer or do anything to induce it.

Moreover, a client who has paid such percentage on the lump sum received, and also upon the annuity for several years, has ratified the contract and will not be heard to claim that it was unconscionable.

A suit by attorneys to enforce their lien upon such annuity may be brought in equity.

APPEAL by the defendant, Robert L. Cutting, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 8th day of July, 1905, upon the decision of the court rendered after a trial at the New York Special Term.

*Franklin Bartlett*, for the appellant.

*William H. Hamilton*, for the respondents.

MCLAUGHLIN, J.:

In January, 1894, one Robert L. Cutting died leaving a will by which he gave all of his property, with the exception of an annuity

to his widow, to one of his sons, James De Wolfe Cutting. The other son, Robert L. Cutting, the appellant, feeling that he had been unjustly treated and that the instrument offered for probate did not correctly express his father's wish, retained the plaintiffs, a firm of lawyers, to oppose the probate of the will. He was unable financially to pay the plaintiffs, and for the purpose of securing them for the services to be rendered in his behalf, he entered into an agreement with them on the 1st of February, 1894, by the terms of which he agreed, "in consideration of legal services heretofore and hereafter to be rendered," to assign, transfer and set over to them " forty per cent (40%) of any and all recovery " which he should receive — which per cent, however, was to be reduced to thirty-three and one-third per cent, provided the contemplated litigation was ended by the decision of the surrogate, and to ten per cent in the event of a settlement realizing $50,000 or more. The agreement further provided that the plaintiffs should not "call upon the said Robert L. Cutting   *   *   *   for any sum or sums of money to pay the necessary disbursements required in the said proceedings."

The plaintiffs, under their retainer and the agreement referred to, rendered services as attorneys for the appellant in proceedings to compel an accounting of his grandfather's estate, as well as in the Surrogate's Court to prevent the probate of his father's will. Their efforts were successful, because they obtained a settlement and compromise by which he was paid $30,000 in cash, and to be thereafter paid an annuity of $4,000 — payment of which was secured by a deposit with the defendant trust company of $95,000. The appellant, appreciating the value of the services rendered for him by the plaintiffs and the validity of the agreement which he had entered into with them, when he received the $30,000 in cash paid them the ten per cent stipulated, and thereafter for a certain time paid them ten per cent of the annuity received from the trust company. Subsequently, however, he refused to pay the plaintiffs the ten per cent stipulated on the annuity and repudiated the agreement, whereupon this action was brought against him and the trust company to enforce the same. The plaintiffs were successful, the trial court holding that they had a lien to the extent of ten per cent on the annuity as the same matured, which it directed should be paid by the trust company, and Cutting alone has appealed.

The judgment is attacked principally upon the ground that the agreement to pay the ten per cent is unconscionable, for which reason it ought not to be enforced by a court of equity, and that it is also champertous and, therefore, void and cannot be enforced.

Under the findings of the trial court — and there is an abundance to sustain them — the agreement cannot be said to be unconscionable. In *Matter of Fitzsimons* (174 N. Y. 15) it was held that the mere fact that an attorney was to receive one-half of the recovery did not render an agreement unconscionable, in the absence of proof that it was induced by fraud, or that the compensation provided for was so excessive as to evince a purpose to obtain an improper or undue advantage. There is not a suggestion in this record that there was any fraud practiced upon the appellant in obtaining the agreement, or that he did not when he executed it fully appreciate its legal effect; on the contrary, it appears that he did appreciate it and subsequently recognized it as binding upon him by paying ten per cent of the $30,000 received when the settlement was made, and for several years thereafter paying ten per cent of the $4,000 annuity. An attorney or counselor at law, by express provision of statute, can agree with his client as to the amount to be paid for services to be rendered (Code Civ. Proc. § 66), and an agreement made for that purpose, in the absence of evidence showing that a fraud has been perpetrated on the client, or that he did not fully understand the purport of the agreement, must be enforced, like other contracts, according to its terms. The statute gives the right to an attorney and client to make a contract as to the former's compensation, and it is a matter of no importance, when the contract is brought under review, what the compensation agreed to be paid is, providing the contract is legal in other respects. The court cannot make contracts for parties, and only has power to construe them as made. If the contract as made were the result of a fraud practiced upon the client, or if it appeared that the compensation were so excessive, in view of the services rendered, as to indicate that an improper or undue advantage had been taken of the client, then relief would be afforded. But that is not this case. Here was a large estate in which the appellant, if his father's will were probated, had no interest whatever. He thought he had been wronged and that the instrument sought to be probated was not his

father's will, and to prevent its probate he applied to the plaintiffs, and that the services rendered by them were very valuable to him is evidenced by the fact that a compromise was effected by which he received, not only $30,000 in cash, but an annuity of $4,000 so long as he should live. It cannot be said, therefore, especially in view of the findings and conclusions of the trial court to the contrary, that the amount agreed to be paid to the plaintiffs was so excessive as to indicate a purpose to obtain improper or undue advantage of the appellant.

Nor do I think it can be said the agreement was champertous. The entire claim of the appellant in this respect is based upon that part of the agreement which provided that the plaintiffs would not call upon the appellant to pay the disbursements incident to or necessarily incurred by the prosecution of the proposed litigation. It is true an attorney cannot, directly or indirectly, either before or after an action or proceeding is instituted, promise or give a valuable consideration to any person as an inducement to placing or in consideration of having placed in his hands a demand of any kind for the purpose of bringing an action thereon. (Code Civ. Proc. § 74.) But the plaintiffs did not seek the defendant. He voluntarily went to them, and, for the purpose of securing their services, made the agreement. The fact that they were not to call upon him to pay the expenses of the proceeding did not, upon its face, make the agreement bad. There is no express provision in it that the attorneys were to pay the expenses, and even if that is fairly to be inferred, it does not prevent the agreement being enforced, because, if that be held, then the legal effect of it is that they were to have the ten per cent after deducting therefrom the expenses incurred; and in this respect the case in principle is precisely like *Fowler* v. *Callan* (102 N. Y. 395). There the attorney expressly agreed to conduct for his client certain legal proceedings and pay all the costs and expenses of the same, receiving as compensation a one-half interest in certain land, a deed of which was given, which was the subject-matter of the litigation. The attorney, having been successful in the litigation, thereafter brought an action of ejectment under the deed thus given to him. The defense was that the agreement was champertous. The trial court so held, and the same was affirmed by the late General Term of the Court of Common Pleas (12 Daly, 263). The judgment, however,

was reversed, the Court of Appeals holding that the contract was not in violation of the statutory provision, but was an agreement purely for compensation and, therefore, valid. This case was cited with approval and followed in *Matter of Fitzsimons* (*supra*), where Judge MARTIN, in delivering the opinion — and his language is quite as applicable to this case as it was to that — said : "The appellant neither sought the retainer, nor did anything to induce it. So far as appears it was not occasioned by any offer or solicitation of his, but originated in the free and unprejudiced choice of the client. The agreement appears to have been purely one for compensation. The arrangement contemplated success, in which event one-half the recovery would pay both attorneys. The compensation for the services of both would be discharged out of the portion of the property which would come into the hands of the attorney for that precise purpose. The contract in no respect induced or protracted the litigation. The appellant stirred up no strife, induced no litigation, but merely agreed to take for the compensation of himself and his associate, who was present at the time of the agreement and presumptively consented to it, one-half of the recovery to be divided between them as they should agree. The contention that this agreement was within the prohibition of section 74 and, therefore, void, cannot, we think, be upheld."

The agreement here under consideration, when construed in the light of the evidence and the findings of the trial court, was simply to the effect that the plaintiffs were to receive, as compensation for the services to be rendered, a certain percentage payable out of the recovery. This did not make the agreement champertous under the provision of the statute before referred to. In reaching this conclusion, the cases of *Stedwell* v. *Hartmann* (74 App. Div. 126; affd., 173 N. Y. 624) and *Begly* v. *Weddigen* (86 App. Div. 629), and others cited by appellant's counsel, have not been overlooked.

The action was properly brought in equity. The trust company declined to recognize the validity of the agreement, and the appellant repudiated it. Therefore, there was nothing for the plaintiffs to do but enforce the lien which they had upon the annuity agreed to be paid. (*Fischer-Hansen* v. *Brooklyn Heights R. R. Co.*, 173 N. Y. 492.)

I am of the opinion that the judgment is right and should be affirmed, with costs to the respondents.

O'BRIEN, P. J., PATTERSON, LAUGHLIN and HOUGHTON, JJ., concurred.

PATTERSON, J. (concurring):

I concur fully in the views expressed by Mr. Justice McLAUGHLIN in his opinion in this case. Much was said upon the argument concerning the so-called unconscionable character of the agreement upon which the action was brought. There is nothing whatever in the record even to suggest that the agreement was of that character. The services rendered by the plaintiffs' firm were of the greatest value to the defendant Cutting, and secured for him a result for which a compensation of ten per cent upon the amount realized cannot be called exorbitant. In view of what was accomplished by the plaintiffs' firm, that compensation is reasonable. Mr. Cutting acquiesced in the contract with knowledge of all its bearings, and from time to time paid the amounts he agreed to pay and thus repeatedly ratified it after abundant opportunity for consideration. In such circumstances a party will not be heard upon a claim that the arrangement he assails is unconscionable. (*Kent* v. *Quicksilver Mining Co.,* 78 N. Y. 190.)

LAUGHLIN, J., concurred.

Judgment affirmed, with costs. Order filed.