Allen Murray Myers, J.
Does an attorney have the unfettered right to charge whatever he wants to for his services? What right does the court have to supervise, review and modify or reject a retainer contract entered into between an attorney and his client? Should the court concern itself with the reasonableness of the fee whenever a suit is brought to enforce a retainer contract freely entered into by the contracting parties? These and other questions present themselves for resolution in this law suit.
The plaintiff law firm sues to recover from defendant, a former client, the sum of $9,784.27. This sum represents a balance due on bills for fees for legal services rendered, for which defendant was charged a total sum of $38,730 of which $30,000 was paid; and on charges for disbursements incurred in the amount of $1,191.18 of which $136.91 was paid.
*399 Pleadings
The complaint was based on three causes of action: on an express retainer agreement entered into in the summer of 1972; on a quantum meruit basis; and on an account stated between the parties in April, 1973.
Defendant admitted the allegations of paragraph numbered "4” of the complaint which alleged that, "Defendant promised and agreed to compensate plaintiffs for the legal services referred to in paragraph '3’ at the customary and usual fees charged by plaintiffs and to reimburse plaintiffs for the disbursements, fees and expenses plaintiffs incurred on behalf of defendant as a consequence of the performance of such legal services.”
Defendant also admitted the paragraph of the complaint numbered "8” to the effect that defendant promised to pay the fair and reasonable value of plaintiffs’ services plus disbursements.
However, defendant denied that the fees charged were fair and reasonable and that the amount demanded was due and owing.
In addition, defendant interposed two affirmative defenses: payment; and a full accord and satisfaction in that plaintiff had elected to assert a lien, for the sum claimed to be due, $9,784.27, on the proceeds of a settlement agreement reached on June 1, 1973 in a Federal suit commenced on behalf of the defendant by plaintiff against National Patent Development Corporation and two individuals.
Trial Motions
The case was tried before me without a jury. Decision was reserved on defendants’ motion to dismiss at the close of plaintiffs’ case; on plaintiffs’ motion for judgment at the close of the trial and on plaintiffs’ motion to strike the second affirmative defense. About one month after the trial was concluded, defendant, by way of its posttrial memorandum also moved to conform the first paragraph of its verified answer to the proof, pursuant to CPLR 3025 (subd c), by adding the words: “and with respect to the allegation designated '4’ defendant alleges it was never apprised by plaintiffs of their customary and usual fees and therefore did not promise and agree to pay to plaintiffs their fees in the of [sic] $38,730.”
*400 Court’s Power Over Legal Retainer Contracts
Section 474 of the Judiciary Law provides that, "The compensation of an attorney or counsellor for his services is governed by agreement, express or implied, which is not restrained by law”. However, "notwithstanding section 474 * * * few propositions are better established than that our courts do retain * * * [the] power of supervision.” (Gair v Peck, 6 NY2d 97, 106.)
However, the court’s power of supervision is limited to granting relief from and proscribing retainers which are unconscionable, fraudulent or illegal. (Matter of Fitzsimons, 174 NY 15; Matter of Sasson, 231 App Div 524; Ransom v Ransom, 147 App Div 835; Ransom v Cutting, 112 App Div 150, affd, 188 N Y 447; Rogers v Sound of Music, 74 Misc 2d 699, 702). The purpose of the rule is to give effect to section 474 of the Judiciary Law which provides that an attorney’s compensation is governed in the ordinary case by the contract between the parties, express or implied. The rule was well stated in Ransom v Cutting (supra, p 152) wherein the court construed the predecessor to section 474: "An attorney or counselor at law, by express provision of statute, can agree with his client as to the amount to be paid for services to be rendered (Code Civ. Proc. §66), and an agreement made for that purpose, in the absence of evidence showing that a fraud has been perpetrated on the client, or that he did not fully understand the purport of the agreement, must be enforced, like other contracts, according to its terms. The statute gives the right to an attorney and client to make a contract as to the former’s compensation, and it is a matter of no importance, when the contract is brought under review, what the compensation agreed to be paid is, providing the contract is legal in other respects. The court cannot make contracts for parties and only has power to construe them as made. If the contract as made were the result of a fraud practiced upon the client, or if it appeared that the compensation were so excessive, in view of the services rendered, as to indicate that an improper or undue advantage had been taken of the client, then relief would be afforded.”
Findings
In the case before me I have not found a scintilla of evidence to suggest fraud, overreaching, illegality or uncon *401 scionability. Defendant, a business corporation run by experienced and knowledgeable business executives, retained the plaintiff law firm with its eyes wide open. The executives knew and understood the terms of the retainer agreement and did in fact adhere to its terms until the defendant’s financial predicament prompted them to seek avoidance. Their belated argument that they did not actually know what were plaintiffs’ usual and customary charges is really of no consequence because they obviously were content to pay such fees, whatever they happened to be. They had retained first rate law firms before and were presumably aware of the prevailing rates. They had but to ask and they would have been informed. The evidence is overwhelming that defendant was charged at plaintiffs’ customary and usual rates and I find such rates to have been fair and reasonable.
In the light of the evidence I also find that the defenses interposed were sham and frivolous. Plaintiff not only proved to my satisfaction an express contract, but also an implied contract (based on the behavior of the parties); its action in quantum meruit and its action on an account stated. And as if that were not enough, plaintiff has also proved that defendant’s obligation to plaintiff in the amount demanded was finally determined in the Federal action and that defendant is now collaterally estopped from relitigating that issue in this proceeding. (See Leviten v Sandbank, 291 N Y 352; Roulstone v Oesterreicher, 188 Misc 741.) As the court stated in Roulstone (p 742), inasmuch as an attorney’s lien is measured by the value of attorney’s services "once the value of attorney’s services is determined in a proceeding to fix his lien, it will be conclusive upon the parties in any other subsequent proceeding or action.”
The Second Affirmative Defense of Accord and Satisfaction
There is no support in the evidence for this defense. By statute (Judiciary Law, § 475) plaintiff had the right to bring a proceeding in the Federal case to fix an attorney’s lien upon the proceeds of the suit, if any. It is elementary, that by so doing plaintiff did not discharge its claim or waive its right to any other legal redress. (Fischer-Hansen v Brooklyn Hgts. R. R. Co. 173 N Y 492; Citizen’s Bank of White Plains, N.Y. v Oglesby, 270 App Div 136.) It was not necessary to make an election between the attorney’s lien and other remedies be *402 cause they were cumulative, and plaintiff made no such election. The motion to dismiss the second affirmative defense is therefore granted.
Conclusion
Accordingly judgment is rendered in favor of plaintiff in the sum of $9,784.27 plus interest as it may appear.
Defendant’s motion to amend its answer is denied for even if the motion were granted, it would not have affected my judgment. The other motions are disposed of in accordance with this decision.