## SECOND DEPARTMENT, SEPTEMBER, 1980

### (September 2, 1980)

■ REISCH & KLAR, Respondent, v JANET SADOFSKY, Appellant.—In an action on a retainer agreement, defendant appeals from an order of the Supreme Court, Nassau County, entered July 30, 1979, which upon granting plaintiff's motion for reargument of a prior order of the same court dated June 11, 1979, which order (a) granted plaintiff summary judgment as to liability, and (b) directed a hearing as to "the service rendered and its value", deleted from the prior order the words "and its value". Order reversed, without costs or disbursements, order dated June 11, 1979 vacated

and motion for summary judgment denied. In the midst of matrimonial litigation, the defendant wife (who was the plaintiff in the matrimonial action) retained plaintiff as new counsel pursuant to an agreement submitted by said plaintiff that the fee was to be $100 for each out-of-court hour of legal services, $125 "for each hour spent in court but not on trial", and "$1,000.00 per day (or any part thereof) for each day of trial." Based thereon, and after crediting its client for $1,000 paid on the signing of the retainer, plaintiff sued for $10,338.75 and then sought summary judgment. (We note that plaintiff's award of $8,500 pursuant to section 237 of the Domestic Relations Law, which was the basis for a judgment against the husband, has not been finally determined [see *Sadofsky v Sadofsky,* 78 AD2d 520]. We assume that whatever is ultimately paid on that award will be credited towards payment of the ultimate judgment in this case.) In granting summary judgment in favor of the plaintiff on the issue of liability, Special Term stated: "As for the amount due plaintiff, a hearing shall be held to determine both the service rendered *and its value."* (Emphasis supplied.) On reargument, the words, "and its value" were deleted. We hold that, under the facts and circumstances of this case where a question is raised concerning the propriety of the retainer agreement, the services rendered and the amount sought in payment therefor by the plaintiff, summary judgment was inappropriate. We believe that a trial is necessary at which there will be a full exploration of all the facts and circumstances including the conditions under which the agreement was made, the extent of the services rendered and the value thereof. This kind of exploratory inquiry is necessary before a factual determination of unconscionability, if warranted, may be made by the court *(Gross v Russo,* 47 AD2d 655). We note also that the court in *Gair v Peck* (6 NY2d 97, 107), held that the attorney " 'is an officer of the court and is judged as such, and technical contractual rights must yield to his duty as such officer' ", and in this context, the court, in considering whether a retainer agreement was unconscionable because of the exorbitance of the amount demanded, adopted, with approval, the following language of Associate Justice Nathan L. Miller of this court in *McCoy v Gas Engine Power Co.* (135 App Div 771, 772-773): "the amount of the fee, standing alone and unexplained, may be sufficient to show that an unfair advantage was taken of the client or, in other words, that a legal fraud was perpetrated upon him. *(Morehouse v. Brooklyn Heights R. R. Co.,* 185 N. Y. 520.)" The underlying and implicit control of the court over fee agreements between attorneys and clients is declared in *Matter of First Nat. Bank of East Islip v Brower* (42 NY2d 471, 474), as follows: "there should be recognition of the traditional authority of the courts to supervise the charging of fees for legal services under the court's inherent and statutory power to regulate the practice of Law *(Gair v Peck,* 6 NY2d 97; cf. Judiciary Law, §§ 53, 90, art 15)." Further because of the social implications and public interest the court has been invested with a wider discretion in the control of matrimonial actions. *(Winans v Winans,* 124 NY 140.)* Under this broad criterion and where, as here, the amount is challenged as excessive, the inquiry requires not only a consideration of the quantum of professional services rendered, but also whether the time claimed is reasonable for such work, and whether the amount demanded "is out of proportion to the value of the attorney's services" *(Gross v Russo, supra,* p 655) and is, therefore, unconscionable. Under the circumstances presented, we should adhere to our rule in *Gross v Russo (supra)* in which we held that "A full trial of the issues has been the practice in prior cases and that procedure should be followed here (see *Ward v. Orsini,* 243 N. Y.

123; *Morehouse v. Brooklyn Heights R. R. Co.,* 185 N. Y. 520; *Fellner v. Zuckerberg,* 202 Misc. 611, revg. 202 Misc. 122)." Gibbons, Gulotta and Cohalan, JJ., concur.

Lazer, J. P., dissents and votes to affirm the order, with the following memorandum: I have no dispute with the majority's view that the inherent and statutory power of the courts to regulate the practice of law provides us with the authority to supervise the charging of fees for legal services (see *Gair v Peck,* 6 NY2d 97). Nonetheless, where a client and attorney have entered into a retainer agreement for such services, the regulatory authority should be invoked only where there is a showing of unconscionability *(Gross v Russo,* 47 AD2d 655; *Ward v Orsini,* 243 NY 123) or that the attorney sought to obtain an improper or unfair advantage over his client *(Matter of Fitzsimons,* 174 NY 15). Here, the defendant responded to plaintiff's action on the retainer agreement by interposing general denials. The plaintiff reacted with a motion for summary judgment to which was attached a copy of a detailed and itemized bill for 96½ hours of services totaling $11,143.75 plus $168 in expenses. Since the defendant had paid $1,000 upon execution of the agreement, the balance allegedly due was $10,311.75. Arithmetic reveals that the sum billed by the plaintiff amounts to about $115 per hour for a variety of in- and out-of-court services. The defendant's painfully brief affidavit in opposition to plaintiff's motion declared, *inter alia:* "The claim made by plaintiff attorneys is outrageous. There were services rendered. However, the amounts claimed to be due is *[sic]* strongly contested * * * Your affiant disputes the claim of the plaintiff with respect to the *services allegedly rendered.* The retainer called for the payment of $1,000 as a retainer fee. The balance of the retainer, assuming that it was validly entered into, still requires the introduction of some evidence or proof that *services were rendered"* (emphasis supplied). Special Term granted summary judgment on the issue of liability and scheduled a hearing on the matter of "both the service rendered and its value." Plaintiff then moved for reargument, contending that there could be no issue as to the value of the services since it had been fixed by contract. In opposition, the defendant's counsel submitted his own affidavit asserting that the "defendant challenges the value of plaintiff's services". Special Term granted reargument, struck the reference to value in its first order, and limited the assessment issue to the services rendered. Plaintiff was thus required to establish the hours spent at each type of service rendered in accordance with the retainer agreement, but was not obligated to establish value since that was fixed in the retainer agreement. On this record, I believe it would be improper to compel the plaintiff to demonstrate at the damage hearing that its partners' experience and status at the bar warrants payment of the fees at the rate fixed by the parties in the retainer contract. In her brief on this appeal, the defendant argues: (1) an attorney's retainer may always be reviewable by the court; (2) that equitable estoppel applies because the plaintiff made a claim for fees against the husband; and (3) since "plaintiffs' claim * * * is one to recover the fair and reasonable value" of the services, the defendant was entitled to a hearing on the value of the services. Only the first contention merits further discussion. My dissent is based upon the fact that in opposing the motion for summary judgment the defendant has raised no factual issue as to the value of the services rendered. All she has questioned is whether the time allegedly spent actually was spent and whether plaintiff should be paid at all since the action against her husband was settled. It is beyond cavil that the party who opposes summary judgment must lay bare her proof in evidentiary

form *(Matter of Bank of N. Y.,* 43 AD2d 105, affd 35 NY2d 512) in order to raise a triable issue of fact *(Mallad Constr. Corp. v County Fed. Sav. & Loan Assn.,* 32 NY2d 285). Mere conclusory statements will not suffice *(Rosenberg v Del-Mar Div., Champion Int. Corp.,* 56 AD2d 576), nor will surmise, conjecture and suspicion *(Shapiro v Health Ins. Plan of Greater N. Y.,* 7 NY2d 56). If mere incantation of the word "outrageous" can suffice to raise a fact issue as to whether the services rendered were worth the rates fixed in the contract (and, therefore, whether they should be paid for), then no agreement fixing such rates has any really binding significance. The consequence of the holding here is that without any factual allegation that the rates were unfair or the services defective, a client can compel her lawyer to prove in court—obviously through expert testimony—that the services rendered were worth the fees charged. How plaintiff arrived at the total of the amount allegedly due is properly the subject of the assessment hearing, but unless that figure or the rates fixed in the *retainer agreement itself reflect* facial unconscionability or undue advantage, there is no basis here for a trial relative to their fairness or the quality of the services rendered. If the amounts set forth in the retainer agreement are in fact unconscionable, the defendant should at least have pointed to the improper items; if the services rendered were qualitatively defective, she should have indicated how. Considering defendant's failure to produce facts in opposition to the motion for summary judgment, the plaintiff should not be put to proof of its partners' competence or that the amounts fixed in the agreement are equivalent to the market value of their services.