Donald J. WILLIAMSON, P. A., a Professional Association, Plaintiff,

v.

JOHN D. QUINN CONSTRUCTION CORP., a Corporation of the State of New York, Defendant.

No. 81 Civ. 3542.

United States District Court, S. D. New York.

April 7, 1982.

Goldman & Hafetz, New York City, for plaintiff; Frederick P. Hafetz, New York City, of counsel.

D'Amato & Lynch, New York City, for plaintiff on counterclaim; John G. Fellinger, New York City, of counsel.

John Walshe, New York City, for defendant.

## OPINION

EDWARD WEINFELD, District Judge.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Donald J. Williamson P.A. ("Williamson P.A."), a professional association of the State of New Jersey seeks to recover from the defendant, John D. Quinn Construction Corp. ("Quinn"), a New York corporation, payment for legal services and disbursements rendered in an arbitration proceeding. The Williamson association is composed of two attorneys, Donald J. Williamson, the sole shareholder, and Michael F. Rehill, an associate. It maintains offices in Newark, New Jersey. Donald J. Williamson is admitted to practice in the courts of New York and New Jersey and in the Eastern and Southern United States District Courts of New York. Michael F. Rehill is admitted in the State of New Jersey and the United States District Court of New Jersey.

Quinn and Hownor Associates Inc. ("Hownor") were parties to an arbitration proceeding which was instituted by Hownor under the provisions of a construction contract between them. Hownor claimed Quinn had breached the contract, for which it sought to recover damages in the sum of

$71,089; alternatively it alleged a quantum meruit claim for $125,219. Quinn set up a counterclaim against Hownor seeking $125,000 for damages occasioned by Hownor's alleged delays in performance.

Upon the commencement of the arbitration proceeding, Quinn was represented by the New York law firm of Gibney, Anthony & Flaherty ("Gibney"). Hearings were held on May 5, May 19, June 17 and June 18, 1980, on which day Hownor completed its direct case and rested. John Flaherty, the partner-in-charge at Gibney and John D. Quinn, the Chief Executive Officer of Quinn, were of the view that because of certain incidents that occurred during the arbitration, the prospects of resisting Hownor's prima facie case or succeeding on the Quinn counterclaim were dim. Flaherty and Quinn agreed it was desirable to obtain the services of counsel experienced in construction litigation in an attempt to bolster Quinn's situation.

Williamson P.A. was of counsel to the Gibney firm. After discussions with Quinn, Flaherty was authorized by Quinn to engage Williamson P.A. to continue the arbitration proceedings in association with Gibney. Williamson P.A. was retained, with Donald J. Williamson to supervise all activities and strategy and Michael Rehill to conduct the day-by-day services required. Thereafter, Williamson P.A. and Gibney jointly represented Quinn in the continued arbitration. Upon the resumption of the arbitration hearing, Quinn's counterclaim of $125,000 against Hownor for delay damages was withdrawn and such withdrawal is the subject of a counterclaim by Quinn against Williamson P.A. for malpractice, discussed hereafter. Testimony was taken before the arbitrator on August 12, 13, 14, October 6 and 10, 1980. After the submission of briefs, reply briefs and findings of fact, the arbitrator awarded Hownor $10,628 upon his claim.

Williamson P.A. in this action seeks recovery of the sum of $43,768.95 for the services rendered by Donald J. Williamson and Michael F. Rehill and disbursements. Williamson P.A. alleges it was retained by Quinn. Quinn denies it retained Williamson P.A. and denies that it authorized Gibney to retain Williamson P.A.; it asserts that Williamson P.A. was engaged by Gibney on its own as trial counsel and that Gibney is liable for any services that Williamson P.A. rendered in the arbitration proceeding. In addition, Quinn asserts other defenses, to wit, that Michael Rehill who conducted the arbitration hearings was not licensed to practice law in New York State and that Williamson P.A. was not authorized to practice law in this State. Quinn also asserts a counterclaim against Williamson P.A. for $125,000 upon an allegation that its damage claim against Hownor by reason of its delay in construction was withdrawn without its authorization or informed consent. Further, upon a contention that neither Williamson P.A. nor Gibney were authorized to expend any sums in excess of $450 for the retention of an expert or for any other expenses in connection with the arbitration, Quinn seeks recovery for payment made to the expert in the sum of $2,050 in excess of the amount authorized.

■ Upon a review of the totality of the evidence and an appraisal of the demeanor of witnesses who gave conflicting testimony on essential matters, the Court finds that in early July 1980, after Hownor had rested its direct case before the arbitrator, Quinn authorized Gibney to engage Williamson P.A. to act as counsel in the continued arbitration; further, that Quinn on July 23, 1980 confirmed the retention of Williamson P.A. in that capacity and agreed that its compensation was to be at an "average" rate of $100 per hour—that is $110 per hour for Donald Williamson's services and $90 per hour for Michael Rehill's services. The Court further finds that Quinn at all times agreed, understood and knew that Williamson P.A. was to be compensated for its services separately and apart from any compensation to which Gibney might be entitled for its continued services in the arbitration.

The credible evidence also warrants a finding that Quinn authorized Williamson P.A. to retain an engineering expert to

assist in evaluating architectural plans and structural drawings and to testify as an expert in the arbitration hearing; that Williamson P.A. in retaining the expert did not exceed its authority with respect to the fees to be paid to the expert; that in fact the amounts billed to Quinn by the expert were fair and reasonable.

█ As to Quinn's counterclaim for malpractice in the withdrawal of the delay damages counterclaim, the Court finds that it was withdrawn after, in response to plaintiff's request to defendant for material to support the counterclaim, Quinn failed to produce credible evidence or documentary proof to substantiate the counterclaim; that the withdrawal was with Quinn's express and informed consent.

There remains Quinn's claim that Williamson P.A. is foreclosed from recovery of any fees because Michael Rehill, who performed the bulk of the services, was not admitted to practice in this State and Williamson P.A. likewise is not authorized to practice in this State. Plaintiff's services were rendered solely in the arbitration proceeding. An arbitration tribunal is not a court of record; its rules of evidence and procedures differ from those of courts of record; its fact finding process is not equivalent to judicial fact finding;[1] it has no provision for the admission *pro hac vice* of local or out-of-state attorneys. In *Spanos v. Skouras Theatres Corp.*,[2] Judge Friendly held that an attorney not admitted to practice law in New York could recover fees for legal services even though he had not been admitted *pro hac vice* because "there is not

the slightest reason to suppose that if [a motion had been made it] would have been denied."[3] This observation applies with even greater force with respect to an arbitration proceeding which is of such an informal nature.

While no case precisely in point has been found either under New York or New Jersey law, the issue has been addressed by the Association of the Bar of The City of New York.[4] Although the report focused on labor arbitration, it considered generally the issue of legal representation before arbitration tribunals. The report states "[i]t should be noted that no support has to date been found in judicial decision, statute or ethical code for the proposition that representation of a party in any kind of arbitration amounts to the practice of law." The report concludes "the Committee is of the opinion that representation of a party in an arbitration proceeding by a non-lawyer or a lawyer from another jurisdiction is not the unauthorized practice of law." Quinn has cited no case nor has the Court's independent research disclosed any to the contrary.

█ Thus we reach the final question, the amount to be awarded to the plaintiff for the services rendered. While the Court has found that Quinn expressly agreed to pay plaintiff an hourly rate of $110 and $90 respectively for Donald J. Williamson and Michael F. Rehill's services, this begins rather than ends inquiry. As a general principle, a lawyer's compensation is governed by the express contract with a client and they are bound to its terms.[5] However,

---

1. *Alexander v. Gardner-Denver Company*, 415 U.S. 36, 57–58, 94 S.Ct. 1011, 1024, 39 L.Ed.2d 147 (1973) ("[t]he factfinding process in arbitration usually is not equivalent to judicial factfinding. The record of the arbitration proceedings is not as complete; the usual rules of evidence do not apply; and rights and procedures common to civil trials, such as discovery, compulsory process, cross-examination, and testimony under oath, are often severely limited or unavailable. [Citations omitted.] And as this Court has recognized, '[a]rbitrators have no obligation to the court to give their reasons for an award.' [Citation omitted.] Indeed, it is the informality of arbitral procedure that en-

ables it to function as an efficient, inexpensive, and expeditious means for dispute resolution.")

2. 364 F.2d 161 (2d Cir.), *cert. denied*, 385 U.S. 987, 87 S.Ct. 597, 17 L.Ed.2d 448 (1966).

3. 364 F.2d at 168.

4. Committee Report, Labor Arbitration and the Unauthorized Practice of Law, The Record of The Association of the Bar of The City of New York, Vol. 30, No. 5/6, May/June 1975.

5. *See* N.Y. Judiciary Law § 474 (McKinney 1978); *Gair v. Peck*, 6 N.Y.2d 97, 105, 188 N.Y.S.2d 491, 496, 160 N.E.2d 43 (1959); *Rodkinson v. Haecker*, 248 N.Y. 480, 489, 162 N.E. 493, 495 (1928).

"few propositions are better established than that our courts do retain power of supervision"[6] to consider, notwithstanding the agreement, a client's challenge thereto as unreasonable, unconscionable, exorbitant or for any reason that would move a court of equity to modify or set it aside.[7] An agreement will not be enforced where the compensation sought is "excessive, or out of proportion to the value of the attorney's services."[8]

Quinn charges that the amount sought is excessive and out of proportion to the true value of the services rendered. It also attacks the competency and effectiveness of plaintiff's advocacy of its interests. The attack is as ungracious as it is unfounded. The Court has reviewed the transcript of the continued arbitration and the post-hearing brief and reply brief. There can be no question but that Williamson P.A. brought to bear a high order of professional skill in its representation of the defendant's interests. Nonetheless, the question remains as to the fairness and reasonableness of the requested amount, $43,768.95, based upon the agreed hourly rate.

The courts in recent years have considered time spent on a matter the "lodestar" in determining fee allowances.[9] However, it is only of relative importance.[10] The time factor must bear a reasonable relationship to other factors that enter into the evaluation of the fairness and reasonableness of the fee, such as the nature and complexity of the issues, the client's exposure to liability, the results achieved, and whether the time expended was necessarily required.[11] Also to be taken into account are the services rendered by the Gibney firm in the arbitration proceeding, both before and subsequent to Williamson P.A.'s participation, for which defendant may also be liable. If time were the sole criterion, it can result in rewarding the incompetent and inexperienced lawyer and penalizing the competent and experienced lawyer. The former would receive higher fees since it would take him a longer time than the latter to complete the required work product.

While in the instant case the issues were not as "simple" as defendant contends, this Court's review of the plaintiff's efforts suggests that in some areas its activities were more extended than was reasonably required. To cite but one example, in the preparation of the main brief, which, of course, involved a study of the 1,234 page transcript of the proceedings, plaintiff recorded 97.5 hours for Rehill's services and on the reply brief 89.75 hours, a total of 187.25 hours—or twenty-three and a half days calculated on a daily eight-hour basis—which at his hourly rate amounts to $16,852.50, just for the briefing. The Court concludes that the issues inherent in the case did not require or justify the expenditure of that amount of time on the briefs; so, too, some of the time reported by Williamson, the supervising attorney, appears beyond that necessarily required. In all, Rehill expended a total of 373.5 hours and Williamson 85.75 hours.

**6.** *Gair v. Peck*, 6 N.Y.2d 97, 106, 188 N.Y.S.2d 491, 497, 160 N.E.2d 43 (1959).

**7.** *First National Bank of East Islip v. Brower*, 42 N.Y.2d 471, 474, 398 N.Y.S.2d 875, 876, 368 N.E.2d 1240 (1977); *Rodkinson v. Haecker*, 248 N.Y. 480, 489, 162 N.E. 493, 496 (1928); *Botein, Haas, Sklar & Hertzberg v. Polymetrics Int'l Inc.*, 81 Misc.2d 398, 366 N.Y.S.2d 251 (1975).

**8.** *Ward v. Orsini*, 243 N.Y. 123, 127, 152 N.E. 696, 698 (1926); *Reisch & Klar v. Sadofsky*, 78 A.D.2d 517, 431 N.Y.S.2d 591, 592 (1980).

**9.** *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 473 (2d Cir. 1974); *also Lindy Bros. Bldrs. Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 170 (3d Cir. 1973).

**10.** *Woods v. State of New York*, 494 F.Supp. 201, 205 (S.D.N.Y.1980); *Voege v. Ackerman*, 70 F.R.D. 693, 695 (S.D.N.Y.1976); *Blank v. Talley Indus. Inc.*, 390 F.Supp. 1, 4 (S.D.N.Y. 1975); *Levin v. Mississippi River Corp.*, 377 F.Supp. 926, 931 (S.D.N.Y.), *aff'd*, 508 F.2d 836 (2d Cir. 1974), *cert. denied sub nom. Gabriel v. Levin*, 421 U.S. 915, 95 S.Ct. 1575, 43 L.Ed.2d 781 (1975).

**11.** *Tillman v. Komar*, 259 N.Y. 133, 136, 181 N.E. 75, 76 (1932); *Jordan v. Freeman*, 40 A.D.2d 656, 336 N.Y.S.2d 671 (1972); *McAvoy v. Harron*, 26 A.D.2d 452, 275 N.Y.S.2d 348 (1966), *aff'd*, 21 N.Y.2d 821, 288 N.Y.S.2d 906, 235 N.E.2d 910 (1968).

The Court, based upon its experience and a review of the arbitration record and applying an empirical judgment, is of the view that all services could have been rendered within 60% of the time now charged and still have afforded adequate representation to the defendant. Accordingly, based upon 224.1 hours in the instance of Rehill's services at $90 an hour, the fee allowed is $20,169, and in the instance of Williamson's services, the fee allowed is $5,659.50, a total of $25,828.50, plus disbursements in the sum of $721.45, a grand total of $26,549.95, with interest from February 4, 1981, the date the bill was rendered to defendant. Interest is to be calculated at the rate of 6% per annum for the period prior to June 15, 1981 and at the rate of 9% per annum thereafter.[12] Judgment may be entered accordingly.

The foregoing shall constitute the Court's Findings of Fact and Conclusions of Law.

12. N.Y.C.P.L.R. § 5004 (McKinney Supp.1981).