Petition of **ROSENMAN COLIN FREUND LEWIS & COHEN, for an Adjudication of its Rights in the Matter of**

Julian **SHERRIER, Plaintiff,**

v.

Bernice **RICHARD, Defendant.**

No. 82 Civ. 3723 (RWS).

United States District Court, S.D. New York.

Dec. 21, 1984.

Rosenman Colin Freund Lewis & Cohen, New York City, pro se; Norman Jay Itzkoff, New York City, of counsel.

Brown & Seymour, New York City, for defendant; Whitney North Seymour, Jr., New York City, of counsel.

OPINION

SWEET, District Judge.

This action is yet another sequel to the affair of Bernice Richard ("Mrs. Richard") and Julian Sherrier ("Sherrier"). Petitioner Rosenman Colin Freund Lewis & Cohen ("Rosenman"), a large and well known New York law firm, brought this proceeding against Mrs. Richard to establish its attorneys' lien and to recover fees allegedly owed Rosenman for its representation of Mrs. Richard in litigation brought against her by Sherrier. Rosenman now moves this court for an order striking all of the affirmative defenses presented by Mrs. Richard and for summary judgment in its favor. Mrs. Richard has cross-moved for an order dismissing Rosenman's petition. For the reasons set forth below, Rosenman's motion is granted in part and denied in part and Mrs. Richard's motion is denied.

**Prior Proceedings**

The prior proceedings and facts in the underlying controversy between Sherrier and Mrs. Richard are fully set out in this court's decision reported at 564 F.Supp. 448 (S.D.N.Y.1983), ("the underlying action") and need not be repeated here. Rosenman commenced this proceeding on June 17, 1983, seeking an order determining that

Mrs. Richard owed it $304,973.05 in fees arising out of Rosenman's representation of Mrs. Richard in the underlying action and enforcing both a statutory attorney's lien in that amount upon the judgment awarded Mrs. Richard and a retaining lien upon Mrs. Richard's papers presently in Rosenman's possession. After a time Mrs. Richard retained her present counsel, who succeeded prior counsel, who in turn had relieved Rosenman. On May 17, 1984 Mrs. Richard served an amended answer asserting ten affirmative defenses to the petition, claiming that there is no basis for a statutory lien and no proceeds to which a lien could attach. In addition, she contends that the court lacks personal and subject matter jurisdiction over this matter. Rosenman has now moved this court for an order striking these affirmative defenses and for judgment in its favor. Mrs. Richard in her cross-motion for an order dismissing Rosenman's petition asserts that Rosenman's claims must be dismissed because the fees sought are unconscionable.

**Facts**

The following facts relating to this controversy are not in dispute except where noted. Rosenman has represented Mrs. Richard in various matters since at least 1972 and represented her deceased husband prior to that time. Mrs. Richard first approached Mal Barasch, a Rosenman partner ("Barasch"), in 1980 for aid in her dispute with Julian Sherrier. On October 7, 1980, Barasch and Mrs. Richard signed a retainer agreement ("the retainer letter") in which Mrs. Richard agreed to pay Rosenman's "normal time charges" for Rosenman's services on her behalf in connection with the Sherrier dispute and to reimburse Rosenman for any out of pocket disbursements incurred. The retainer letter provided that Rosenman would not participate in any settlement reached with Sherrier and expressly confirmed that either Rosenman or Mrs. Richard had the "absolute right" to terminate the representation "at any time."

Over the next eighteen months Rosenman sent Mrs. Richard monthly bills listing charges incurred on the Sherrier matter.

Actual litigation of the underlying action did not commence until June of 1982. At that time, Mrs. Richard was informed by Barasch and the Rosenman partner in charge of the litigation, Gerald Rosenberg, ("Rosenberg"), that the litigation would probably proceed at a cost of $7,000 to $10,000 per week. Mrs. Richard claims that she was told that the entire litigation would probably cost about $40,000 to $50,000. Rosenman contends that Mrs. Richard was repeatedly told that the litigation "probably would be very expensive."

During the next month after expedited discovery was undertaken and during pendency of a preliminary injunction motion, almost $50,000 in legal fees were incurred. In a letter dated August 5, 1982 sent to Mrs. Richard along with her monthly bill, Barasch informed Mrs. Richard that the Rosenman bill for July services would be equally high, if not higher than the bill for June. Trial did not commence until October, by which time approximately $190,000 in fees had been incurred. Mrs. Richard contends that during this period she protested directly to Mr. Barasch to no avail about the amount of the charges, the number of lawyers assigned to the case, and the quality of work done. Total billings for services performed in the underlying litigation exceeded $350,000, of which approximately $305,000 remains unpaid and is the subject of this proceeding.

After the trial in the underlying action had been completed and post trial briefs submitted and shortly after Mrs. Richard received a Rosenman bill dated February 9, 1983 in the amount of $305,543.05, she informed Barasch that she was displeased with the amount of the bill and wanted to replace Rosenman. Barasch asserts that Rosenman offered to continue its representation of Mrs. Richard through the entry of a judgment without charging her for those services and that Mrs. Richard opted to have Rosenman continue to represent her in the prejudgment stage.

A judgment was entered in the underlying action on May 9, 1983. Rosenman contends that it performed $22,560 worth of

services and incurred $1,200 worth of disbursements on Mrs. Richard's behalf between February and May of 1983 without billing her for those amounts. On May 10, 1983 Mrs. Richard told Rosenman that she would not pay her outstanding balance. Rosenman applied to this court for and was granted leave to withdraw as attorneys of record for Mrs. Richard on May 27, 1983. In her motion papers Mrs. Richard contends that she discharged Rosenman, although it is unclear at what point the alleged discharge took place.

**Jurisdiction**

The threshold issue presented is whether this court has jurisdiction over this controversy. It is well settled that "[a] federal court may, in its discretion, exercise ancillary jurisdiction to hear fee disputes and lien claims between litigants and their attorneys when the dispute relates to the main action, regardless of the jurisdictional basis of the main action." *Marrero v. Christiano*, 575 F.Supp. 837, 839 (S.D.N.Y. 1983). *See also National Equipment Rental, Ltd. v. Mercury Typesetting Co.*, 323 F.2d 784, 786 (2d Cir.1963); *Application of Kamerman*, 278 F.2d 411, 413 (2d Cir.1960). The courts' ancillary power extends to disputes that arise after the initial litigation is no longer before the court. *See Application of Kamerman, supra*, 278 F.2d 411 (underlying action dismissed prior to suit on lien). *See also Grimes v. Chrysler Motors Corp.*, 565 F.2d 841 (2d Cir.1977) (affirming lower court's decision to require deposit of settlement funds with court and supervise distribution of funds following attorney fee dispute affirmed). Because this court has jurisdiction over this action as ancillary to the underlying action, Mrs. Richard's first three affirmative defenses alleging lack of jurisdiction are dismissed.

**Motions to Dismiss**

The enforceability of Rosenman's attorneys liens depends preliminarily on the validity and enforceability of the retainer agreement. As a general rule, "a lawyer's compensation is governed by the express contract with a client and they are bound to its terms." *Williamson v. John D. Quinn Corp.*, 537 F.Supp. 613, 616 (S.D. N.Y.1982); New York Judiciary Law § 474 (McKinney 1983). Like any other contract, a retainer "is presumed to be fair until the contrary appears and will be enforced in the absence of fraud, deceit, overreaching, or undue influence." *Prial v. S. Ct. Uniformed Officers Ass'n*, 91 Misc.2d 115, 397 N.Y.S.2d 528, 530 (1st Dept.1977).

Rosenman contends that Mrs. Richard has not presented any evidence that would render the retainer agreement unenforceable. In certain circumstances, however, "the amount of the fee, standing alone and unexplained, may be sufficient to show that an unfair advantage was taken of the client, or, in other words, that a legal fraud was perpetrated upon him." *Gair v. Peck*, 6 N.Y.2d 97, 188 N.Y.S.2d 491, 498, 160 N.E.2d 43, 50 (1st Dept.1959) (citations omitted). Courts may grant a client relief if it appears that the compensation is "so excessive, in view of the services rendered, as to indicate that an improper or undue advantage had been taken of the client ...". *Botein, Hays, Sklar & Herzberg v. Polymetrics Int. Inc.*, 81 Misc.2d 398, 366 N.Y.S.2d 251, 253–54 (Civ.Ct.N.Y.County 1975). *See also Williamson v. John D. Quinn Corp., supra*, 537 F.Supp. at 617 ("An agreement will not be enforced where the compensation sought is 'excessive or out of proportion to the true value of the attorney's services'.") Mrs. Richard would like this court to rule that, as a matter of law, the fee charged by Rosenman was as a matter of law unconscionable, given the amount involved in the underlying action.

In the customary summary judgment setting, something more than a conclusory allegation such as unconscionability is required. *Project Release v. Prevost*, 722 F.2d 960, 968–69 (2d Cir.1983); *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980) (litigant must bring to court's attention "some affirmative indication that his version of relevant events is not fanciful.") Here there are no evidentiary facts set forth, no attorney's

affidavit submitted, to counter the effect of the retainer agreement. No evidence has been submitted that anything other than customary time charges were made. In an action as vigorously litigated as was the underlying action, the amount of the fee in itself does not alone create a factual issue.

However, because the amount of the claimed fee is substantial, because a fiduciary relationship is involved, because Rosenman has sole access to the relevant documents, and because of the supervisory nature of the court's role, I conclude the better practice is to deny Rosenman's request for summary relief until either a hearing or further development of the facts and to follow the admonition contained in *Gross v. Russo*, 47 App.Div.2d 655, 364 N.Y.S.2d 184 (2d Dept.1975):

> We express no opinion as to the reasonableness of the agreement, but merely note that a full exploration of all the facts and circumstances, including the intent of the parties and whether the fee demanded is out of proportion to the value of the attorney's services, is necessary before a determination of unconscionability may be made. A full trial of the issues has been the practice in prior cases and that procedure should be followed here (*see Ward v. Orsini*, 243 N.Y. 123, 152 N.E. 696; *Morehouse v. Brooklyn Heights R.R. Co.*, 185 N.Y. 520, 78 N.E. 179; *Fellner v. Zuckerberg*, 202 Misc. 611, 118 N.Y.S.2d 470, *revg.* 202 Misc. 122, 109 N.Y.S.2d 50).

The reasoning of the court in *Reisch & Klar v. Sadofsky* is equally applicable here:

> [U]nder the facts and circumstances of this case where a question is raised concerning the propriety of the retainer agreement, the services rendered and the amount sought in payment thereof by the plaintiff, summary judgment was inappropriate. We believe that a trial is necessary at which there will be a full exploration of all the facts and circumstances including the conditions under which the agreement was made, the ex-

tent of the services rendered and the value thereof.

*Reisch & Klar v. Sadofsky*, 78 App.Div.2d 517, 431 N.Y.S.2d 591, 592 (2d Dept.1980). The state authorities do not focus on the type of fee involved, contingent or otherwise, and no reason has been advanced to do so. Because triable issues of material fact are raised as to the appropriateness of Rosenman's fees, a determination of the enforceability of the retainer agreement must await discovery and, if necessary, a further factual hearing.

Rosenman has also argued that independent of this court's decision as to the validity of the retainer agreement, it should be granted summary judgment on an account stated or implied contract theory. An agreement may be implied "if a party receiving a statement of account keeps it without objecting to it within a reasonable time, because the party receiving the amount is bound to examine the statement and object to it, if objection there be. An agreement may also be implied if the debtor makes partial payment." *Chisholm-Ryder Co. v. Sommer & Sommer*, 70 App.Div.2d 429, 421 N.Y.S.2d 455, 457–59 (4th Dept.1979). In such a case, a court may imply an agreement between the parties to pay the amounts billed. In the case at hand, however, Mrs. Richard contends that she repeatedly voiced her objections to the amounts charged.

Oral objections to an account stated are sufficient to defeat a motion for summary judgment. *Prudential Building Maintenance Corp. v. Burton, Seidman Associates*, 86 App.Div.2d 519, 445 N.Y.S.2d 758, 758–59 (1st Dept.1982). In addition, a court may regulate an attorney's fee whenever there is a showing of unconscionability or where it appears that an attorney has obtained an improper or unfair advantage of a client, not just in situations involving express retainer agreements. *See Chisholm-Ryder Co. v. Sommer & Sommer, supra*, 421 N.Y.S.2d at 459 (implied contract is valid "[i]n the absence of fraud, mistake or other equitable considerations making it improper to recognize the agree-

ment.") Thus a determination of the existence and enforceability of any implied agreement must also await a decision at trial as to the propriety of Rosenman's fees.

In a cross-motion and as an affirmative defense, Mrs. Richard asserts that she is entitled to summary judgment on the ground that Rosenman should be held to the $50,000 maximum fee that she contends was agreed upon to cover the Sherrier litigation through trial, an amount that she has fully paid. However, even assuming that an estimate or statement of opinion made prior to the commencement of an action as to what the defense of a lawsuit might cost could constitute the basis for estopping Rosenman from enforcing the retainer agreement or asserting an attorney's lien, Mrs. Richard's failure to dismiss Rosenman after receiving the monthly bills chronicling Rosenman's charges constitutes a waiver of this defense. Mrs. Richard continued to accept Rosenman's services with full knowledge of the fees incurred. Instead of exercising her "absolute right" to replace Rosenman once she became aware of the degree to which the total fees would exceed the alleged estimate, she chose to proceed with the litigation. Mrs. Richard's "sixth affirmative defense" is therefore dismissed.

Mrs. Richard also contends in her cross motion and her answer that Rosenman's petition should be dismissed on the ground that she discharged Rosenman. An attorney discharged for just cause loses all right to compensation, *see Gonzalez v. Hegner*, 20 Misc.2d 232, 192 N.Y.S.2d 212 (Sup.Ct.N.Y.Co.1959), and an attorney discharged without cause is only entitled to recover on a *quantum meruit* basis. *Schwartz v. Broadcast Music, Inc.*, 130 F.Supp. 956, 957–58 (S.D.N.Y.1955). However, Mrs. Richard has failed to present any evidence that she dismissed Rosenman during the course of the underlying action. While the parties agree that Mrs. Richard informed Rosenman of her desire to terminate their relationship in February of 1984, Mrs. Richard does not dispute Rosenman's

contention that at that time she accepted their offer to continue their representation until after the judgment was entered, nor does she contend that their relationship did in fact end at that time. Because Mrs. Richard has not presented any evidence of dismissal prior to the completion of the underlying action, she may not seek to avoid liability on the grounds that Rosenman was dismissed, with or without cause.

Mrs. Richard also contends that because the fees are disputed, Rosenman may only be compensated on a *quantum meruit* basis. However, while *quantum meruit* may be the only basis for recovery if an attorney has been discharged without cause, where there has been no discharge, the contract between attorney and client must govern, absent evidence of fraud, deceit, overreaching, or undue influence. The cases cited by Mrs. Richard in support of her contention that a *quantum meruit* theory must be applied when fees are disputed all involve situations where an attorney was discharged. *Schwartz v. Broadcast Music, Inc., supra*, 130 F.Supp. at 957–58; *Nolan v. Hemingway Bros. Interstate Trucking Co.*, 88 F.Supp. 111 (S.D.N.Y.1950); *NIC Projector Corp. v. Marie-Jecktor Co.*, 16 F.Supp. 605, 607 (S.D.N.Y. 1935). While Rosenman may be limited to at best a *quantum meruit* recovery if the retainer agreement is shown to be unenforceable, such a determination must await further factual exposition and if necessary, a trial of the issues involved.

Mrs. Richard also argues in her motion papers and as her seventh affirmative defense that the retainer letter is unenforceable because it refers to Rosenman's "normal time charges" without defining them and because, according to Mrs. Richard, there is no such thing as Rosenman's normal time charges. She also alleges that she was never advised as to what these charges were, nor did she ever receive an itemized breakdown of the charges or work performed by Rosenman. However, the parties both agree as to the longstanding nature of Mrs. Richard's relationship with Rosenman, and Mrs. Richard offers no evi-

dence that suggests she was unfamiliar with Rosenman's billing practices. In addition, she does not allege that at any time she asked for and was refused any itemized breakdown of Rosenman's charges. In *Botein, Hays, Sklar & Herzberg v. Polymetrics International, Inc., supra*, the court dismissed a business corporation's defense based on lack of knowledge on the grounds that "[t]hey had retained first rate law firms before and were presumably aware of the prevailing rates." Although Mrs. Richard is not an experienced business executive, she had had considerable experience with Rosenman's billing methods prior to its defense of the underlying litigation. While she is entitled to object to the fairness or reasonableness of Rosenman's fees under the retainer agreement, she may not rely on a defense that she was unaware of what those fees were, and her seventh affirmative defense is therefore dismissed.

■ In her answer, Mrs. Richard further contends that to the extent that Rosenman is found to have a cause of action, it expressly waived its statutory right, pursuant to Section 475 of New York State's Judiciary Law, to assert a charging lien on any portion of the proceeds of the underlying litigation when it signed the October 7, 1980 retainer agreement. In the retainer letter, Rosenman stated that "We will not participate in any settlement you will make with Mr. Sherrier." Because this statement cannot reasonably be read to constitute an express waiver of Rosenman's right to assert a lien on any judgment awarded Mrs. Richard in the Sherrier litigation, Mrs. Richard's fifth affirmative defense must be stricken as a matter of law.

■ Finally, as her fourth and tenth affirmative defenses, Mrs. Richard argues that to the extent Rosenman is entitled to enforce a statutory lien on the judgment in the underlying action, the lien is limited to $17,545, the amount awarded to Mrs. Richard in connection with her claim for the portion of the insurance proceeds wrongfully retained by Sherrier following the theft of the Padmapani Bronze, plus inter-

est. Section 475 of the New York Judiciary Law provides that:

### § 475. Attorney's lien in action, special or other proceeding

From the commencement of an action, special or other proceeding in any court or before any state, municipal or federal department, except a department of labor, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, judgment or final order in his client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien.

The general rule is that an attorney's charging lien does not attach when an attorney merely defends a client's interests without asserting an affirmative claim. *Spinello v. Spinello*, 70 Misc.2d 521, 334 N.Y.S.2d 70 (1972); *Desmond v. Socha*, 38 App.Div.2d 22, 327 N.Y.S.2d 178, *aff'd*, 31 N.Y.2d 687, 337 N.Y.S.2d 261, 289 N.E.2d 181 (1971). However, the underlying action was not one where one party challenged the other party's claim of title to certain property. Neither Mrs. Richard nor Sherrier had clear legal title to the Buddhas at the beginning of the litigation. Instead, the case involved two parties both seeking to clarify their respective rights and obligations arising out of an involved and complex relationship. The counterclaims asserted by Rosenman in the litigation successfully provided Mrs. Richard with certain rights to and interests in both various of the Buddhas and in the proceeds of transactions involving the Buddhas. Because its claims asserted on behalf of Mrs. Richard resulted in an affirmative judgment for her, to the extent that it shows that it is entitled to payment Rosenman is entitled to assert a lien upon the entire value of the judgment granted Mrs. Rich-

ard in the amended judgment entered on June 25, 1984, which includes both the sum of money owed Mrs. Richard by Sherrier and any property and monies to which Mrs. Richard is entitled.

For the above reasons, Rosenman's motion to strike Mrs. Richard's affirmative defenses is granted as to all except her eighth affirmative defense, and both Rosenman's and Mrs. Richard's motions to dismiss are denied.

**IT IS SO ORDERED.**