OPINION OF THE COURT
Ernest L. Signorelli, J.
In this uncontested administratrix’s accounting proceeding, *86 a stipulation has been submitted to the court for its approval and incorporation into the provisions of an intermediate accounting decree.
Jurisdiction has been obtained over the necessary parties to the proceeding, and no one has appeared in opposition to the relief requested by the petitioner.
The decedent died, testate, on the 17th day of March 1980, survived by a spouse and an infant daughter, born of the marriage between himself and his former wife, who also survived him. Pursuant to the terms of his last will and testament, dated December 6, 1972, the decedent devised and bequeathed his real and personal property, together with the maximum amount allowable as a marital deduction under Federal law, to his former spouse, and disposed of the rest, residue and remainder of his estate, in trust, for the benefit of his former spouse during her lifetime. Upon the death of his said spouse, the decedent directed that the principal of the trust estate continue to be held, in trust, for the benefit of his daughter, until she attained the age of 30, at which time, it was to be transferred and paid over to her, outright, if then living, or if not then living, to her then living issue, or if none, to a named charity. The decedent made no provision in the instrument for his second wife. As a consequence, his daughter became the sole beneficiary of his estate, by virtue of his divorce from his former spouse on October 19, 1979.
On the 8th day of July 1980, the decedent’s former spouse, as guardian of her infant daughter’s property, filed a petition with the court requesting the probate of the decedent’s last will and testament, and the issuance to her of letters of administration c. t. a. This application was unsuccessfully opposed by the decedent’s surviving spouse, whose objections to probate were dismissed in the context of a motion for summary judgment made by the guardian ad litem appointed to represent the interests of the infant in the proceeding. As a result thereof, letters of administration c. t. a. were issued by this court to the decedent’s former spouse on November 24, 1980, upon her posting of a bond in the sum of $20,000.
Approximately three months later, the decedent’s surviving spouse served and filed a notice of election against his estate. Simultaneously therewith, a discovery proceeding was commenced by the fiduciary against the decedent’s spouse, which proceeding was subsequently discontinued with prejudice.
Two years thereafter, a petition to compel an accounting *87 was filed by the decedent’s surviving spouse seeking, inter alla, a determination of her elective share against his estate. Although the application was initially contested by the fiduciary, the parties ultimately resolved their differences, and the proceeding was withdrawn in accordance with the terms of a stipulation of settlement requiring the fiduciary to file her account with the court within six months from the date thereof.
On the 5th day of June 1985, the fiduciary filed the instant accounting proceeding with the court requesting, inter alla, (1) judicial allowance and/or rejection of various claims filed against the estate, (2) approval of a pro rata payment of those claims which were allowed, (3) fixation of counsel fees in a stated amount, and (4) authorization to pay administrator’s commissions in the sum of $6,634.03.
In support of the first two items of relief requested, the petitioner’s account indicates that multiple claims existed against the decedent’s estate at death, which far exceeded the total gross value of its assets, presently estimated in schedule A thereof to be worth $305,000. More specifically, schedule D of the account reflects that the decedent had secured debts totaling $118,440, miscellaneous debts, rejected in whole or in part, of approximately $159,000, and contingent debts of a least $4.75 million, the most significant of which was attributable to a cause of action against the estate for wrongful death.
On the return date of citation, four creditors, with estimated claims of $4.9 million, appeared in the proceeding. Subsequent thereto, a stipulation was filed with the court providing, inter alla, for the payment of counsel fees in the sum of $70,000, and the settlement and satisfaction of the various debts of the estate in specified pro rata amounts. The terms of this stipulation were thereafter incorporated into the schedules of the petitioner’s account, which was amended by order of the court dated March 24, 1986, on notice to all interested parties to the proceeding. As a consequence thereof, the petitioner’s only request for relief herein became the judicial settlement of her intermediate account, subject to the court’s ratification of the propriety of the stipulation and its terms. In this regard, paragraph 11 of the said stipulation specifically states as follows: "It is agreed that this stipulation will be filed in the Surrogate’s Court of the County of Suffolk along with a decree incorporating its provisions by reference; if the said Surrogate’s Court declines to grant such a decree, or otherwise disapproves this stipulation or any portion *88 hereof, the same shall be of no further force or effect, and the undersigned, or any of them, shall be entitled to take such further proceedings and file such further papers with respect to the within proceeding as they may deem appropriate.”
The record reflects that all parties who have appeared in the proceeding are adult and competent and have consented to and signed the agreement. In addition, those parties who have not appeared in the proceeding have been duly notified of the settlement and have not appeared in opposition to the relief requested.
Nevertheless, despite the absence of objections, and/or the written consents of the persons interested in this proceeding, this court will not sanction any portion of the stipulation submitted which seeks to circumscribe its power and duty to pass upon or review any one or more of its provisions which lie within the scope of its statutory and inherent jurisdiction.
More particularly, the court addresses itself to that paragraph of the stipulation which conditions its enforcement and binding effect upon its receiving judicial approval. This kind of all or nothing proposition leaves the court little recourse but to rubber stamp the stipulation regardless of its terms, or disapprove of it in its entirety. Either alternative is but an act of blind justice which this court cannot countenance. Indeed, the court will not place it imprimatur upon any document before it without scrutiny, and it is in this light that it has reviewed the stipulation herein.
A settlement may embrace and be binding upon the court only as to those matters that are within the power of the parties to resolve without prior judicial approval. However, as to those matters that exceed this limitation, a settlement constitutes nothing more than a recommendation to the court as to the manner in which the parties desire to resolve their differences.
While the law is clear as to the authority of a fiduciary to compromise or otherwise settle a claim against an estate (EPTL 11-1.1 [b] [13]), it is equally clear as to the authority of the court to fix and determine legal fees. Such authority has, indeed, long been recognized as within the court’s inherent and statutory power to regulate the practice of law. (Gair v Peck, 6 NY2d 97 [1959]; Matter of First Natl. Bank v Brower, 42 NY2d 471 [1977]; Avco Fin. Servs. Trust v Bentley, 116 Misc 2d 34 [1982].)
Lately, exercise of this authority has been spurred by a *89 prevailing tendency by certain members of the practicing Bar to exact unreasonable sums of money from their clients for services performed. In making this observation, it has become clear to the court that although viewed as one of the prime constituents of justice and equity, these practitioners, in following this course, have done little to promote its image. Instead, motivated by interests which can solely be characterized as financial, they have embarked upon a track which sacrifices these ends in order to derive a profit through unfair advantage.
As professionals, attorneys are cast in a respected position in today’s society. With this respect flows public confidence and trust in their judgment, advice and direction. Particularly in the area of decedent’s estates is the reliance upon the advice and direction of counsel the most glaring. Indeed, propelled by emotions rather than by a sense of understanding and logic, clients afford counsel unbridled discretion to achieve desirable results on their behalf. The price of this discretion, however, is not without a premium, a premium which, in the court’s opinion, has exceeded the bounds of propriety, and for too long has been allowed to pass without criticism.
In the past several years, this court has become increasingly sensitive to the proclivity of a minority segment of the Bar to view the Surrogate’s Court as a haven by which they may easily enrich themselves at estate expense. So apparent are the transgressions inherent in this situation that the issue has been the subject of a plethora of recent decisions by my colleagues (Matter of Bradley, 128 Misc 2d 240 [1985]; Matter of Stalbe, 130 Misc 2d 725 [Sur Ct, Queens County]; Estate of Faulhaber, NYLJ, Apr. 7, 1986, at 16, col 4 [Sur Ct, Queens County]; Matter of Baby Boy Voss, NYLJ, May 19, 1986, at 19, col 5 [Sur Ct, Nassau County]; Matter of Adoption of Anonymous, NYLJ, Jan. 29, 1986, at 15, col 3 [Sur Ct, Westchester County]), as well as investigations by the Internal Revenue Service and debate by the Surrogate’s Association. Indeed, the media has also seen fit to conduct inquiries into this ever-increasing problem.
In each of these forums, the focus has been upon curtailing the excessive fees charged by counsel in estate-related proceedings. In this regard, the court finds significant a survey conducted by the Internal Revenue Service of 22 counties in upstate New York disclosing a 37% reduction in legal fees amounting to $957,000 in revenues after audit. In 51 of the 64 *90 cases examined, the corrected fee was agreed to by counsel. Moreover, just two months ago, the Surrogate’s Association of New York adopted a resolution which reaffirmed the extensive latitude of the court to fix and determine legal fees.
Indeed, so great have been the abuses that it has triggered a policy of judicial intervention even in the absence of litigation. (Matter of Stalbe, supra; Matter of Brehm, 37 AD2d 95 [4th Dept 1971]; Estate of Shanessy, NYLJ, Feb. 4, 1986, at 12, col 4 [Sur Ct, Queens County]; Matter of Adoption of Anonymous, supra; Matter of Baby Boy Voss, supra.) The jurisdiction of the court to exercise such scrutiny is beyond question and has, in fact, recently been held "unassailable” by the Appellate Division, Second Department. (Matter of Male Infant B., 96 AD2d 1055 [2d Dept 1983].) "The duty and function of the [courts] to keep the house of the law in order does not hinge upon whether clients, worn down by injuries, delay, financial need and counsel holding the purse strings of settlement, knowing little about law or lawyers, have had the stamina to resist [excessive exactions of attorneys whom they’ve retained to represent them]” (Gair v Peck, 6 NY2d, supra, at 111). Indeed, the duty of the court is to oversee and prevent such overreaching by investigating and checking the practices of counsel in any instance, regardless of controversy, where it appears that an egregious fee is being sought and charged for professional services rendered. (Gair v Peck, supra; see, Matter of Brehm, supra; Matter of Promotional Servs., NYLJ, Apr. 28, 1986, at 15, col 3 [County Ct, Nassau County].)
Applying these principles to the case at bar, the court finds the stipulation, to the extent it effectuates a resolution and compromise by the fiduciary of the various claims against the estate to be of full force and effect and binding upon the parties to this proceeding. On the other hand, the court finds the terms of the stipulation, to the extent they encompass an extrajudicial accord as to counsel fees, to be superseded by its power and prerogative, regardless of the circumstances, to assess the reasonableness of the sum set forth.
The generally recognized criteria utilized in the determination of reasonable counsel fees are the time spent, the difficulties involved in the matter, the nature of the services rendered, the amount involved, the professional standing of counsel and the results obtained. (Matter of Freeman, 34 NY2d 1 [1974]; Matter of Potts, 123 Misc 346, affd 213 App Div 59, appeal dismissed 241 NY 510 [1925].)
*91 The court has examined the affidavit of services submitted by counsel and observes, at the outset, that the fee which he requests, $70,000, is in addition to the sum of $12,500, which he received for services he performed for the fiduciary in her individual capacity. More particularly, the court notes that the fee is based upon 712 hours of time expended by partners and associates at the rates of $150/hour and $75/hour, respectively. In this regard, counsel’s affidavit describes work performed in connection with the contested probate, discovery and compulsory accounting proceedings, heretofore discussed, as well as in relation to a contested ancillary administration proceeding in Connecticut, Federal and New York State estate tax proceedings, a proceeding for advice and direction, the instant accounting proceeding, and the negotiation and settlement of the multitude of claims against the estate which essentially saved it from insolvency.
Nevertheless, while the court does not discount the considerable amount of time and effort expended by counsel in the administration of this estate, in the instant case, its assessment of an appropriate fee to be awarded must necessarily be guided and circumscribed by the size of the fund in issue (see, Estate of Meringola, NYLJ, May 25, 1983, at 14, col 6 [Sur Ct, Kings County]; In re Estate of Melinek, NYLJ, Apr. 4, 1986, at 13, col 4 [Sur Ct, Bronx County]). Here, the total fee presently requested by counsel is approximately 20% of the estate’s total principal. Moreover, the court cannot disregard the work which remains to be completed by counsel in order to finalize the settlement of this estate, and the additional fees which will necessarily be incurred thereby. Indeed, in this regard, the account reflects that the value of many of the estate assets is still undetermined, that several unpaid claims have yet to be resolved, that there are assets of the estate which must be liquidated, and that outstanding issues continue to exist as to the possible interest of the deceased in certain foreign realty.
Accordingly, after a careful evaluation and consideration of the nature, extent and details of the services performed by counsel, as well as the size of the estate and the legal fees which the court presumes will be incurred in connection with its final settlement, the court fixes and determines the fair value of counsel’s services to be in the reduced sum of $25,000, of which $15,000 has already been paid, for all services rendered and to be rendered through the settlement of the intermediate accounting decree to be submitted herein.
*92 Notwithstanding the foregoing modification of the fee herein awarded to counsel, the court, in all other respects, deems the stipulation between the parties to be fair and equitable, in the best interests of the estate and, therefore, binding upon the signatories thereto.
Settle decree on notice incorporating the terms of the stipulation as herein modified and otherwise approved.