OPINION OF THE COURT
Edmund A. Calvaruso, J.
Petitioner moves for an order pursuant to CPLR 7511 (b) (1) and (2). He seeks to vacate the arbitration award of Alan L. Of-fen, Esq. as arbitrator dated June 16, 1995. No answer was filed by the respondent. Notwithstanding, respondent did appear at Special Term lacking counsel, and the court permitted a presentation pro se.
This matter comes before the court based on a challenge to the compulsory arbitration program enacted pursuant to 22 NYCRR part 136 and CPLR article 75. It also involves a judicial review of the Milonas Committee rules (Milonas Rules).
Petitioner is Thomas A. Corletta, an attorney admitted to practice law since 1981. He devotes substantially all his time to litigation, and matrimonial law constitutes approximately one third of his practice.
*3 Attorney Corletta was initially telephoned by the respondent on December 1, 1993 to ask if he would undertake representation. The case was a pending matrimonial action with extensive history. The file was delivered to petitioner and he began reviewing it the next day. Over a 10-day period, petitioner spent two and a half hours reviewing the documents. He further spent time in preliminary research, discussions and evaluation.
I. Historical Background of New York’s New Matrimonial Rules
After delay based on significant criticism from Judges, lawyers and the public,[1] the recommendations of the Milonas Committee were imposed on Bench and Bar for the "aggressive judicial commitment” of case management.[2] Several substantive changes were made,[3] some of which placated concerns regarding the public image of the profession as a whole.[4] The well-intentioned efforts to contain cost and expedite case resolution[5] have left New York with the strictest and most comprehensive set of rules in the Nation.[6] As the facts in this case indicate, such ambitious design has not been without impacting consequences.
II. Matrimonial Rules Did Not Apply to Preliminary Negotiations
New part 136[7] (22 NYCRR) was effective on November 30, 1993.[8] It dictates the circumstance where mandatory fee arbitration is required. As initially enacted, the rule provided, *4 in pertinent part: "Section 136.1. Application. This section shall apply where representation has commenced on or after November 30, 1993 to all attorneys who undertake to represent a client in a claim, action or proceeding in either Supreme Court or Family Court * * * for divorce, separation”.[9] (22 NYCRR 136.1.)
The provision was expanded by amendment effective June 22, 1994 to state, in pertinent part: "136.1. Application. This Part shall apply where representation has commenced on or after November 30, 1993, to all attorneys who undertake to represent a client in a claim, action or proceeding, or preliminary to the filing of a claim or proceeding in either Supreme Court or Family Court, or in any court of appellate jurisdiction, for divorce, separation”.[10] (22 NYCRR 136.1 [emphasis added].)
Petitioner holds he was involved in activity preliminary to the acceptance of the case. Moreover, he submits the first version of the Milonas Rules provide no guidance whatsoever for preliminary negotiations — such as what occurred between the parties in this case. The November 1993 rules were amended in June of 1994. However, the June 1994 amendment was not made retroactive. The modification was forward-looking and preserved the legal relationships of those who relied on the previous version.
Petitioner charges he relied upon the November 1993 version. Moreover, the evidence supports his contention. As an attorney, he bills his time at $100 per hour. He spent less than two full days — approximately 12 work hours during the next two months — assimilating respondent’s case. His documentation includes detailed billing and correspondence.
For example, the bill shows three and a half hours for review of the file.* [11] Another three hours were devoted to attorney work for Milonas required activities.[12] Lastly, about five and a half hours were spent in correspondence or telephone conferences with the respondent, the prior lawyer, and other third parties.[13]
*5 In addition, the court has prudently reviewed the determination of the arbitrator. The arbitrator mistakenly excluded time spent with regard to the items required as a part of the new domestic relations procedure for attorneys.[14] The time required for the new procedure is no different than the added efforts by counsel pursuant to 22 NYCRR 202.7 (c) (good faith items); 202.50 (c) (State reporting through the USC-113 form), 202.6 (IJR requirements), etc. Each are created by the Chief Administrative Judge of the Courts and the Office of Court Administration. Each are paid as added cost by the client. No distinction can be made for the additional work created by prodigy of Milonas. This is especially true in light of Code of Professional Responsibility DR 2-106 (establishment of a fee shall take into consideration other work precluded by accepting this employment).[15]
Accordingly, after careful consideration of the cases cited by the petitioner, and further taking into account the arguments of respondent despite his default at Special Term, the court shall grant the petition to vacate for the reasons cited in petitioner’s affirmation. Moreover, in this instance there was no agreement to represent respondent in the pending action, and respondent has made no showing in Special Term that would permit this court to conclude contrary to petition and CPLR 7511 (b).
This matter was a matrimonial action requiring the review of extensive documentation from prior counsel. Petitioner was evaluating the case and whether to take the respondent as a client.[16] His work was properly compensated based on a quantum meruit basis. The newness of the rules also has been taken into consideration when evaluating whether time spent was suitable.
III. Written Matrimonial Retainer Rule Violates Constitutional Right to Contract
The Legislature has exclusive providence to regulate the practice and procedure in the courts absent delegation of the *6 same.[17] In its wisdom, the Legislature passed Judiciary Law § 474 which establishes: "The compensation of an attorney or counsellor for his services is governed by agreement, express or implied, which is not restrained by law” (emphasis added).
The measure of an attorney’s compensation is fixed by agreement with the client, unless the law provides otherwise.[18] To the extent the Presiding Justices of the Appellate Divisions, or the Chief Administrative Judge of the Courts direct matrimonial attorneys to abstain from implied contracts under threat of disciplinary proceedings, they invade a common-law right to contract and transgress the providence of the Legislature as specified in Judiciary Law § 474.[19] No guise of procedural rule-making authority can impinge on the substantive contract rights.[20]
Moreover, even if the State Legislature was inclined to curtail constitutional rights, it must point to specific health, safety or welfare issues before impairing private contracts.[21]
Thus, the incapacity of the Appellate Divisions’ rule-making authority to contravene substantive contract rights is an independent basis to hold mandatory written retainer agreements as unconstitutional and in favor of the petitioner for the reasons given above.
IV. Appellate Courts Lack Legislative Authority Despite Discipline Power
In 1956, the First Department adopted a constrictive contingency fee rule under a pretense of their discipline power. In successful lower courts applications, counsel contended the fee schedule rule established improper "substantive law” in violation of his substantive contractual rights under Judiciary Law § 474. Thereafter, in Gair v Peck[22] the Court of Appeals found error with both the Appellate Division and Special Term because they began their analysis assuming the agreement would be otherwise valid and enforceable under section 474 of *7 the Judiciary Law. The Court of Appeals found flaw, and wrote: "The rule does not touch lawyers’ fees except such as would be unenforceable in any event under section 474 of the Judiciary Law. It has been implied that [the contingency fee schedule at issue] prevents lawyers from charging clients what they could otherwise legitimately charge, but that assumption overlooks that disciplinary action is not threatened except against exacting fees which could not be legally enforced in the absence of [the disputed rule].”[23] (Emphasis added.)
Beyond the defect in analysis, the Gair Court observed: "If this comment [an agreement otherwise enforceable under section 474 of the Judiciary Law] were well founded, it would be a fatal defect [as] the Appellate Division cannot make substantive law by rules”.[24] In the case at hand, petitioner entered into an agreement otherwise enforceable under section 474 of the Judiciary Law. He was contacted to evaluate a pending matrimonial with extensive history. He did so within his substantive contract rights provided by the Judiciary Law which permit "compensation of an attorney or counsellor” for his services "by agreement, express or implied.” As such, he is entitled to reasonable remuneration for the implied contract.
Thus, as an independent basis on Gair v Peck (supra), the court shall find the mandatory written retainer agreement as unconstitutional, and in favor of the petitioner for the reasons stated.
V. Resolution
Accordingly, the award shall be vacated and the matter shall be transferred to City Court to establish the value of services rendered.

. Panel To Examine Matrimonial Rules, NYLJ, Oct. 29, 1993, at 2, col 5.

. Matrimonial Rules: One Year Later, NYLJ, Dec. 2,1994, at 2, col 3.

. Changes included the following: creation of part 1400 to 22 NYCRR; amendment of the Disciplinary Rules of the Lawyers Code of Professional Responsibility — 22 NYCRR 1200.3, 1200.11, and 1200.10 (a); creation of new fee arbitration provisions — 22 NYCRR 136; and amendment to the Uniform Trial Court Rules — 22 NYCRR 202.16.

. Matrimonial Rules: One Year Later, NYLJ, Dec. 2, 1994, at 2, col 3.

. Ibid.

. Divorce Rules Said to Bring Mixed Results on First Anniversary, Lawyers Find Inconsistent Enforcement, NYLJ, Nov. 30, 1994, at 1, col 5.

. 22 NYCRR 136.1 et seq.

. 2 Foster, Freed & Brandes, Law and the Family New York § 3:103, at 100 (2d ed 1995 Cum Supp) (stating "the Chief Administrative Judge of the Courts 'upon consultation with and approval of the Administrative Board of the Courts’ adopted, effective November 30, 1993, a New Part 136 of the Rules of the Chief Administrator, relating to the mandatory 'Fee Arbitration in Matrimonial Cases’ ”).

. See, petitioner’s exhibit F.

. See, petitioner’s exhibit G.

. See, petitioner’s exhibit H; Dec. 2, 1993 to Dec. 12, 1993 of 2.5 hours (at 1); Jan. 31, 1994 of 1.0 hours (at 3).

. See, petitioner’s exhibit H; Dec. 20, 1993 of 1.5 hours (at 2); Dec. 20, 1993 to Dec. 23, 1993 of 2.0 hours (at 2).

. See, petitioner’s exhibit H.

. 22 NYCRR 136.1 et seq.; 1200.3 (a) (7); 1200.10 (a); 1200.11, 1400.1 et seq.

. 22 NYCRR 1200.11 (b) (2).

. The court notes that this matter was considered by Principal Counsel for the Attorney Grievance Committee. They concluded further involvement by their office wak not necessary. (See, petitioner’s exhibit N.) Likewise, the time devoted to correspondence, telephone calls, and "urgent questions” or unscheduled appointments is not beyond that which an ordinary practitioner experiences when representing a party going through a matrimonial.

. Article VI, § 30 of the NY Constitution.

. Brandes & Weidman, Regulation of the Conduct of Divorce Lawyers, NYLJ, Mar. 22, 1994, at 3, col 1.

. Ibid.; 2 Foster, Freed & Brandes, Law and the Family New York § 3:104.

. Ibid.

. Iffland v Iffland, 155 Mise 2d 661 (Sup Ct, Monroe County 1992); US Const, art I, § 10, cl (1); 2 Rotunda, Nowak & Young, Constitutional Law Substance & Procedure § 15.8, at 102 (1986).

. 6 NY2d 97.

. Supra, at 105.

. Supra, at 496.