■ In the Matter of the Arbitration between CARA SERAZIO-PLANT, Respondent, and CASSANDRA L. CHANNING, Appellant. [750 NYS2d 347] —Lahtinen, J. Appeal from an order of the Supreme Court (Cobb, J.), entered July 9, 2001 in Greene County, which, inter alia, denied respondent's application pursuant to CPLR 7511 to vacate an arbitration award.

In December 1997, petitioner retained respondent to represent her in a matrimonial action. Over the next several months petitioner paid respondent $10,000 in legal fees and $3,000 to hire an expert witness. In March 1999, petitioner retained new matrimonial counsel. Petitioner then received an itemized time

sheet from respondent purporting to detail respondent's work on her case, together with an invoice for additional fees of $4,887.50. Petitioner filed for arbitration (see 22 NYCRR former 136.2, 1400.7) claiming that respondent's time sheets were inaccurate, that her services were inept and seeking a refund of her fees previously paid to respondent. Respondent filed a response to petitioner's request for fee arbitration and unsuccessfully attempted to remove the issue of the refund of fees already paid by petitioner to respondent from the arbitrators' consideration. After a hearing, the arbitrators ruled "that, given the totality of the circumstances, [respondent] is not entitled to a fee for services rendered on behalf of [p]etitioner" and that petitioner was "entitled to a refund of the entire $13,000."

Respondent then moved, pursuant to CPLR 7511, to vacate the arbitration award, claiming, inter alia, that the arbitrators exceeded their power and that they so imperfectly executed their power that a final and definite award upon the subject matter was not made (see CPLR 7511 [b] [1] [iii]). Petitioner cross-moved for confirmation of the award. Supreme Court denied respondent's motion and granted petitioner's cross motion to confirm the award, prompting respondent's appeal.

Respondent initially contends that the matrimonial rules (see 22 NYCRR part 1400; see also Code of Professional Responsibility DR 2-106 [c] [2] [22 NYCRR 1200.11 (c) (2)]) conflict with Judiciary Law § 474 and, thus, are invalid. The Court of Appeals, however, has held that, "[n]otwithstanding section 474 * * * few propositions are better established than that our courts do retain this power of supervision" over agreements between attorneys and clients (Gair v Peck, 6 NY2d 97, 106, appeal dismissed and cert denied 361 US 374; see Matter of First Natl. Bank of E. Islip v Brower, 42 NY2d 471, 474 [recognizing "the traditional authority of the courts to supervise the charging of fees for legal services under the courts' inherent and statutory power to regulate the practice of law"]; Smitas v Rickett, 102 AD2d 928, 930 ["(I)t is the established rule that the courts of this State retain authority and implicit control over the supervision of fee arrangements between attorney and client under the court's inherent and statutory power to regulate the practice of law"]). The Court further stated in Gair v Peck (supra at 106) that "[s]ection 474 confers upon the lawyer no inalienable right to impose on his [or her] client, and a retainer agreement becomes unenforcible in some situations where a contract would be enforcible if the parties to it were not attorney and client."

The language of the matrimonial rules reflects that they were designed, among other things, to provide basic boundaries for the attorney-client relationships in an area of practice that produced a disproportionate number of disputes between attorneys and clients. The reasons for promulgating the matrimonial rules included "to address abuses in the practice of matrimonial law and to protect the public" (*Julien v Machson*, 245 AD2d 122, 122). The rules set forth parameters which provide safeguards to both parties to an agreement for legal services regarding this historically contentious area of law. We are unpersuaded that the matrimonial rules, both as written and as applied to the facts on appeal, strayed beyond the court's supervisory powers regarding attorneys or ran afoul of the statutory provisions of Judiciary Law § 474 (*see generally People ex rel. Karlin v Culkin*, 248 NY 465, 477 [Chief Judge Cardozo discussing the power of the courts to regulate attorney conduct]).

Nor are we persuaded that the arbitrators exceeded their power by deciding to deny respondent any fee under the particular facts presented. The rules permit a client to elect an arbitration hearing for a fee dispute (*see* 22 NYCRR 1400.7) and, at such a hearing, the attorney bears the burden of proving the reasonableness of any fee by a preponderance of the evidence (*see* 22 NYCRR 137.7 [d]; *Matter of McNamee, Lochner, Titus & Williams [Killeen]*, 235 AD2d 17, 18). The rules set forth several requirements that, if adhered to by counsel, would assist in meeting such burden, including, among other things, the fundamental requirement of a written retainer and, importantly, providing itemized bills at least every 60 days (*see* 22 NYCRR 1400.3). Here, respondent failed to provide a written retainer, failed to provide a statement of clients rights and responsibilities and failed to provide timely itemized bills. Moreover, the arbitrators found respondent's evidence regarding her legal services to be "troubling" because both her time records and her testimony appeared to the arbitrators as "inaccurate, false and misleading, and unreliable." Examples of respondent's conduct cited by the arbitrators included charging $3,000 for an expert when, in fact, no expert was ever retained, and compromising her client's interests by failing to provide her file to the new attorney in a timely fashion. In light of the established breach of the Code of Professional Responsibility, the failure to adhere to important aspects of the matrimonial rules and the significant exacerbating circumstances that totally eroded respondent's credibility, it was within the province of the arbitrators to conclude that respondent utterly failed to satisfy her burden of proof and, thus, that no attorney fee

was justified (*cf. Bishop v Bishop*, 295 AD2d 382; *Hunt v Hunt*, 273 AD2d 875, 876; *McMahon v Evans*, 169 Misc 2d 509, 516).

While the compulsory nature of the arbitration permits closer judicial scrutiny than voluntary arbitration (*see Matter of Motor Veh. Acc. Indem. Corp. v Aetna Cas. & Sur. Co.*, 89 NY2d 214, 223), our review of the record reveals that the arbitrators' decision clearly has "evidentiary support and is neither arbitrary nor capricious" (*Matter of McNamee, Lochner, Titus & Williams [Killeen]*, 267 AD2d 919, 920).

Respondent's remaining arguments have been considered and rejected as without merit.

Mercure, J.P., Spain and Carpinello, JJ., concur. Ordered that the order is affirmed, with costs.